**CITY OF CEDAR RAPIDS, Iowa, Appellee,**

v.

**McCONNELL–STEVELY–ANDERSON ARCHITECTS AND PLANNERS, P.C., Appellant.**

**No. 87–336.**

Supreme Court of Iowa.

May 11, 1988.

Rehearing Denied June 15, 1988.

Stephen C. Nelson and Richard P. Moore of Moyer & Bergman, Cedar Rapids, for appellant.

David F. McGuire and James H. Flitz, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

This appeal involves the validity of the land use restrictions upon Lot #1, Block #4, Higley's addition, located at 860 17th Street S.E., Cedar Rapids, Iowa (Lot 1, Block 4) (approximately 1.58 acres).

In 1966, McConnell–Stevely–Anderson Architects and Planners, P.C., (MSA), agreed to purchase Lot 1, Block 4, on the condition that the zoning classification would be changed from two-family residential use (R3) to multiple dwelling use (R4) and that the city would permit renova-

tion of the residential building, known as Higley Mansion, for use as an architectural office. MSA intended to temporarily locate its office in Higley Mansion and to construct apartment buildings on adjacent property within Lot 1, Block 4. Later, MSA planned to tear down Higley Mansion and construct a new office building. In November of 1966, MSA presented these plans to the Cedar Rapids Planning Commission as a preliminary step before consideration by the city council of its request for a zoning change.

The planning commission approved MSA's plans and recommended to the city council that Lot 1, Block 4, be rezoned as a multiple dwelling district (R4) and that a special permit be granted to allow MSA to renovate Higley Mansion for use as an architectural office. On December 7, 1966, the city council passed ordinance 125–66 which changed the zoning classification of Lot 1, Block 4, to allow for multiple dwelling use (R4). This rezoning did not permit the property to be used as an architectural office. The city council also passed ordinance 126–66 which did allow Higley Mansion to be renovated and used as an architectural office building. This ordinance, granting a special use, restricted the property's use to an architectual office. It also required that the plans for the office be approved by the city council.

MSA agreed to the terms and conditions of both ordinances (1966 ordinances) and specifically acknowledged that the restrictions would be a covenant to run with the land. MSA remodeled Higley Mansion and used it as their architectural office from 1968 until 1986, but did not proceed with its plan to construct an office building or apartments on Lot 1, Block 4.

In 1972, MSA applied to the city council to rezone Lot 1, Block 4, to a residential transition zone (RT) which would allow for office building use. When neighborhood residents objected to this rezoning, MSA aborted the attempt to rezone its property.

In 1979, the city council adopted a comprehensive zoning ordinance which increased the number of zoning classifications in Cedar Rapids. Lot 1, Block 4, was shown on the zoning map to be in an office/service (O/S) district. Convalescent and nursing homes, including extended medical care facilities, are permitted uses in the O/S district. The 1979 zoning ordinance also provided:

> That all ordinances heretofore ... adopted ... rezoning specific parcels of property whereby conditions ... [or] other requirements made of the property owners in connection with the rezoning of said property, are herewith specifically preserved and exempted from all repealer provisions of this Ordinance, and all such conditions ... or other requirements are continued in full force and effect....

Cedar Rapids, Iowa, Ordinance 32.22 (1979).

In the early 1980's, MSA met with city representatives concerning the zoning classification of Higley Mansion. MSA was interested in razing Higley Mansion and erecting a residential care facility. They requested a demolition permit for Higley Mansion and a building permit for construction of a residential care facility. In December of 1986, a demolition permit was issued. After neighborhood residents objected to MSA's request that the property be used as a residential care facility, the building permit was denied. MSA made no request to rezone Lot 1, Block 4, or to repeal the terms and conditions of the 1966 ordinances.

The city requested that the court declare and construe the zoning classification, restrictions, and allowed use regarding the development of Lot 1, Block 4. The trial court found the 1966 special use ordinances created restrictive covenants that limited the use of Higley Mansion to architectural offices. The conditions and restrictions of the 1966 ordinances were not repealed by adoption of the 1979 comprehensive zoning ordinance. The court found MSA was estopped to challenge the validity of the 1966 ordinance because MSA had agreed to the restrictions and had accepted the benefits of the special use ordinance. The court held the restrictions contained in the 1966 ordinance remain effective and are valid

restrictions to the use of the property. MSA appealed the court's ruling and declaratory judgment.

This case was tried as an action at law for a declaratory judgment. As such, our review will be on error. Iowa R.App.P. 4.

■ MSA contends that the 1979 comprehensive zoning ordinance supersedes the restrictions placed on Lot 1, Block 4, by the 1966 ordinances. We disagree. Even though the 1979 zoning map identified Lot 1, Block 4, in an O/S zoning district, the 1979 ordinance expressly preserved the previous conditions and requirements with the language of section 32.22 of the 1979 city ordinance.

MSA attacks the validity of the 1966 special use ordinance. It cites *Depue v. City of Clinton*, 160 N.W.2d 860 (Iowa 1968), for the proposition that only the board of adjustment, not the city council, has the statutory authority to allow a special use. It also contends that the restrictions and the 1966 special use ordinance number 126–66 amount to illegal contract zoning.[1] However, we need not consider the merits of these challenges if MSA is estopped from challenging the validity of the 1966 ordinances.

Promissory estoppel may be applied against a party asserting the invalidity of an ordinance. *See generally* 6 McQuillin, *The Law of Municipal Corporations* § 20.12 (3rd ed. 1984). The elements of promissory estoppel are (1) a clear and definite agreement; (2) proof that the parties seeking to enforce the agreement reasonably relied upon it to their detriment; and (3) a finding that equity supports enforcement of the agreement. *In re Estate of Graham*, 295 N.W.2d 414, 418–19 (Iowa 1980).

■ The record reflects MSA requested and the city granted by ordinance a zoning change and a special use permit subject to conditions and specific restrictions. MSA accepted the provisions to the ordinances in writing. The city relied on MSA's agreement by adopting ordinances that amended the city zoning ordinance and allowed a special use of Lot 1, Block 4. MSA has benefited from the 1966 ordinances for approximately eighteen years. The trial court found the elements of promissory estoppel were established and that MSA could not now assert the ordinance restrictions were invalid. We conclude that there is substantial evidence to support the court's finding.

Although MSA is estopped to challenge the validity of the 1966 ordinances, this ruling does not limit the city's authority to amend its zoning ordinances or to repeal special restrictions or conditions relating to Lot 1, Block 4 as provided by Iowa Code section 414.5 (1987).

AFFIRMED.

■

---

1. Contract zoning has been described as "the process of imposing, by private agreement, land use restrictions upon a parcel which are extrinsic to the rezoning amendment and which are imposed in conjunction with the passage of the amendment." A. Vestal, *Iowa land Use and Zoning Law* § 4.12 p. 150–52 (1979). This court has not dealt directly with contract zoning, however, other jurisdictions have invalidated ordinances dealing with contract zoning. *See e.g., Midtown Properties Inc. v. Township of Madison,* 68 N.J.Super. 197, 172 A.2d 40 (Law Div.1961), *aff'd per curiam* 78 N.J.Super. 471, 189 A.2d 226 (App.Div.1963); *Knoxville v. Ambrister,* 196 Tenn. 1, 263 S.W.2d 528 (1953); *State ex rel. Zupancic v. Schimenz,* 46 Wis.2d 22, 174 N.W.2d 533 (1970). Contract zoning can be contrasted with spot zoning, which may, in some circumstances, be appropriate. *See Jaffe v. Davenport,* 179 N.W.2d 554 (Iowa 1970); *see also* 8 McQuillin, *The Law of Municipal Corporations* § 25.83–.84 (3rd ed. 1984).