[No. B032383. Second Dist., Div. Four. Mar. 27, 1989.]

CITY OF GLENDALE, Plaintiff and Respondent, v.
ROBERT GEORGE et al., Defendants and Appellants.

---

**COUNSEL**

Carol A. Sobel, Joan W. Howarth, Paul L. Hoffman and Clifford N. Barry for Defendants and Appellants.

Frank R. Manzano, City Attorney, and Scott H. Howard, Assistant City Attorney, for Plaintiff and Respondent.

---

**OPINION**

**WOODS (A. M.), P. J.**—This appeal is from an order denying the motion of Robert and Stella George (appellants) to vacate a consent judgment into which they had entered with the City of Glendale (the City).

 We must first consider the procedural validity of this appeal. Ordinarily, a consent judgment cannot be attacked. (*Atchison, T. & S. F. Ry. Co.* v. *Hildebrand* (1965) 238 Cal.App.2d 859, 861 [48 Cal.Rptr. 339].) An exception exists, however, when the judgment is allegedly void on constitutional grounds, on the theory that such a judgment exceeds the court's jurisdiction and is subject to attack at any time. (*County of Ventura* v. *Tillett* (1982) 133 Cal.App.3d 105, 110-111 [183 Cal.Rptr. 741]; *John Siebel Associates* v. *Keele* (1986) 188 Cal.App.3d 560, 564, fn. 3 [233 Cal.Rptr. 231].)

In the matter before us, appellants contend that the consent judgment violates their First Amendment rights of expression and association. The City argues the order denying appellants' motion to vacate the judgment is nonappealable notwithstanding the alleged constitutional exception, because appellants waived their First Amendment rights by consenting to the judgment.

■ "A waiver of First Amendment rights may only be made by a 'clear and compelling' relinquishment of them. *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130, 145, 87 S.Ct. 1975, 1986, 18 L.Ed.2d 1094 (1967); . . ." (*National Polymer Products* v. *Borg-Warner Corp.* (6th Cir. 1981) 641 F.2d 418, 423.) "Moreover, it is well established that courts closely scrutinize waivers of constitutional rights, and 'indulge every reasonable presumption against a waiver.' [Citations.]" (*Sambo's Restaurants, Inc.* v. *City of Ann Arbor* (6th Cir. 1981) 663 F.2d 686, 690, quoting *Aetna Ins. Co.* v. *Kennedy* (1937) 301 U.S. 389, 393 [81 L.Ed. 1177, 1180, 57 S.Ct. 809].)

Bearing these standards in mind we conclude that appellants did not waive their First Amendment rights by entering into the consent judgment. The relinquishment of a right necessarily implies knowledge of the right being relinquished. (*Curtis Publishing Co.* v. *Butts* (1967) 388 U.S. 130, 143 [18 L.Ed.2d 1094, 1104, 87 S.Ct. 1975] ["an effective waiver must . . . be one of a 'known right or privilege.' "].) The record before us fails to disclose a clear understanding by appellants of the rights that they purportedly waived by entering into the consent judgment. To the extent that the record reveals awareness by appellants that their rights would be curtailed by the proposed judgment, the record also discloses that it was precisely this awareness that led them to resist the agreement. On this record, and indulging the presumption against waiver of fundamental rights, we do not find a clear and compelling relinquishment by appellants of their First Amendment rights.[1] Accordingly, appellants were free to move the trial court to vacate the consent judgment on constitutional grounds and the order denying their motion is appealable.

The facts giving rise to this litigation are that appellants are tenants at a private residence located within the City.[2] On September 3, 1987, the City filed a complaint to abate a public nuisance at appellants' residence, seeking injunctive relief. The City alleged that appellants maintained the residence as a "Santa's Village," which featured a "myriad of lights, displays, rooftop snow, and other items" whose purpose was to attract the public to the residence. The City alleged further that this use of appellants' property was

---

[1] Dicta in *D. H. Overmyer Co.* v. *Frick Co.* (1972) 405 U.S. 174, 185-186 [31 L.Ed.2d 124, 133-134, 92 S.Ct. 775], suggests that in some civil cases the waiver of constitutional rights may have to meet criminal law waiver standards, that is, such waivers must be voluntary, knowing and intelligent. *Overmyer* did not involve waiver of First Amendment rights and we have found no case expressly adopting the criminal law standard with respect to waiver of First Amendment rights. Whether or not *Overmyer* establishes identical standards for waiver in criminal and civil cases, it is relevant to our discussion to the extent it reiterates "the heavy burden against the waiver of constitutional rights, which applies even in civil matters, . . ." (*Id.,* at p. 188 (conc. opn. of Douglas, J.) [*Id.*, at p. 136].)

[2] The owners of the property were also named in the complaint as parties to the judgment. They are not parties to this appeal.

inconsistent with the residential nature of their neighborhood and generated such traffic, noise, noxious fumes and odors, debris and "invasion of light[s]" as to constitute a public nuisance.

After some preliminary procedural skirmishing, appellants and the City entered into a consent judgment and permanent injunction. The relevant provisions of the judgment are set out more fully in the text of this opinion, but may be summarized as follows: restrictions on the time period during which appellants can display Christmas and other ornamental lights; a prohibition on further ornamentation of their residence; a ban on acceptance of donations or other payments at their residence; a qualified prohibition against members of the public entering or remaining on the premises; a ban on the distribution of any literature advertising the "Santa's Village" aspect of appellants' residence, as well as a ban on any other statements, "public or private," characterizing their residence as the residence of Santa Claus; a partial ban on ornamentation of the garage; and restrictions on the volume and time period during which music may be broadcast out of doors.

The consent judgment was filed on November 18, 1987. Within a matter of weeks, on December 3, 1987, appellants moved to set aside and vacate the judgment. They maintained that the judgment violated First Amendment rights of expression and association. The court below rejected appellants' various constitutional attacks on the judgment and denied their motion. This appeal followed. We affirm in part and reverse in part.

I

 Appellants challenge as excessive three provisions of the consent judgment, paragraphs 3(a), 3(b), and 3(f), which restrict further decoration of their residence and the period of time during which certain decorations can be displayed.[3]

The challenged restrictions are "an indirect or incidental regulation of speech . . . resulting from pursuit of governmental goals unrelated to

---

[3] Paragraph 3(a) provides that "any and all outdoor, indoor (when capable of being visible outdoors) ornamental or decorative lighting, including Christmas-type string lights not be activated except during the following time period: [¶] November 24, 1987 through and including January 6, 1988; [¶] November 26, 1988 through and including January 6, 1989; [¶] November 26, 1989 through and including January 6, 1990."

Paragraph 3(b) prohibits addition of "ornaments or other Christmas decorative items, including but not limited to, styrofoam bells, baubles, artificial animals, statuaries, or any other temporary or permanent Christmas-type ornaments, and no additional ornamental lights or lighting shall be placed on the exterior portions of the property, including the garage, and/or backyard area other than what was in place on the property on October 1, 1987."

Paragraph 3(f) requires that "[t]he garage area shall remain usable and accessible for two automobiles and shall not be decorated with any ornaments, statuary and/or ornamental or decorative lighting, at any time unless the garage door is closed."

freedom of expression [citations]." (*Times Mirror Co.* v. *City of Los Angeles* (1987) 192 Cal.App.3d 170, 179 [237 Cal.Rptr. 346].) ■ It has long been held that such a content-neutral restriction is justified "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (*United States* v. *O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673]; *People* ex rel. *Van de Kamp* v. *American Art Enterprises, Inc.* (1977) 75 Cal.App.3d 523, 530 [142 Cal.Rptr. 338].)

■ Appellants challenge the restrictions on the grounds that they exceed the necessities of the case. We first examine the relevant governmental interests so as to provide a context within which to view their claim.

In *Kovacs* v. *Cooper* (1949) 336 U.S. 77 [93 L.Ed. 513, 69 S.Ct. 448, 10 A.L.R.2d 608], the United States Supreme Court upheld a municipal ordinance which banned sound trucks from the streets of Trenton, New Jersey, rejecting a First Amendment challenge to the constitutionality of that ordinance. In its analysis of the competing interests involved, the court stated: "The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself." (*Id.,* at p. 88, fn. omitted [*Id.*, at p. 523].)[4] These competing interests are present in the case before us, pitting an individual's free speech rights against a municipal government's power to regulate and abate a nuisance, "one of the basic functions of the police power." (*Garcia* v. *Gray* (10th Cir. 1974) 507 F.2d 539, 544.) We acknowledge the primacy that freedom of speech occupies in our system of liberties. "Of that freedom one may say that it is the matrix, the indispensable condition, of nearly every other form of freedom." (*Palko* v. *Connecticut* (1937) 302 U.S. 319, 327 [82 L.Ed. 288, 293, 58 S.Ct. 149].) Yet we also recognize "that the state may sometimes curtail speech when necessary to advance a significant and legitimate state interest. [Citation.]" (*City Council* v. *Taxpayers for Vincent* (1984) 466 U.S. 789, 804 [80 L.Ed.2d 772, 786, 104 S.Ct. 2118].)

More recently, in *Frisby* v. *Schultz* (1988) 487 U.S. 474 [101 L.Ed.2d 420, 431, 108 S.Ct. 2495, 2502], the United States Supreme Court affirmed the

---

[4] In referring to freedom of speech, we also refer to forms of nonverbal expression which are protected under First Amendment guaranties. (*Clark* v. *Community for Creative Non-Violence* (1984) 468 U.S. 288, 293 [82 L.Ed.2d 221, 226-227, 104 S.Ct. 3065].) Additionally, our discussion also encompasses the more protective free speech rights guaranteed by our state Constitution. (Cal. Const., art. I, § 2.)

state's compelling interest in preserving the privacy and tranquility of residential neighborhoods in a decision which upheld a municipal ban on residential picketing. "The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.' (*Carey* v. *Brown* [1980] 447 U.S. [455,] 471, 100 S.Ct., at 2296." (*Frisby* v. *Schultz, supra,* 487 U.S. at p. 484 [101 L.Ed.2d at p. 431, 108 S.Ct. at p. 2502].)

There is no dispute that the florid ornamentation of appellants' house attracts, in Mr. George's words, "thousands of people" into his neighborhood. Indeed, attracting kindred spirits appears to be one of the purposes for appellants' activity. Certainly, appellants' decoration of their house is "[e]xpression . . . symbolized by conduct" (*Clark* v. *Community for Creative Non-Violence, supra,* 468 U.S. at p. 293 [82 L.Ed.2d at p. 227]), and falls within the First Amendment's ambit.

As we have observed, however, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. [Citations.]" (*Heffron* v. *Int'l Soc. for Krishna Consc.* (1981) 452 U.S. 640, 647 [69 L.Ed.2d 298, 306, 101 S.Ct. 2559].) And where the First Amendment activity impinges upon the peaceful enjoyment by others of their homes in a residential neighborhood, the state may impose reasonable time, place and manner restrictions to advance the compelling interest of preserving the integrity of such a neighborhood.

In this instance, the restrictions imposed by the City are reasonable. They are narrowly tailored to correct the source of the nuisance while still leaving appellants ample exercise of their First Amendment rights. Accordingly, we reject appellants' argument that these restrictions cut "too wide a swath" or that they are "unsupported" by the available facts.

We also affirm that portion of the judgment contained in paragraph 3(c), precluding appellants from accepting "any donations or payments for the sales of any goods or services or for the performing of any functions." ██ ██ Notwithstanding appellants' legal legerdemain, we perceive no First Amendment issues involved in this ban.[5] Rather, paragraph 3(c) simply prohibits appellants from using their private

---

[5] Here, as elsewhere, appellants engage in hypotheticals to persuade us that fundamental constitutional rights are threatened by the consent judgment. There is merit to most of appellants' contentions. However, "[i]t is a well-settled principle of constitutional law that '. . . a court will not consider every conceivable situation which might arise under the language of the [challenged] statute and will not consider the question of constitutionality with reference to hypothetical situations.' [Citations.]" (*Sussli* v. *City of San Mateo* (1981) 120 Cal.App.3d 1, 10 [173 Cal.Rptr. 781], quoting *In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305].)

residence as a commercial or charitable enterprise. Appellants' reliance on *Riley* v. *National Federation of the Blind of N.C.* (1988) 487 U.S. 781 [101 L.Ed.2d 669, 108 S.Ct. 2667] is misplaced as that decision involves issues entirely absent from this case.

■ We come now to paragraph 3(e) of the consent judgment which enjoins the "distribution of any literature, business cards, documents or other information which advertises or sets forth the numerical address of 1339 Alameda Avenue . . . in association [*sic*] with Santa Claus, Santa's Dream House or North Pole, and . . . advertising or public or private statement by defendants, their agents, or any person acting or participating with defendants regarding the use of 1339 Alameda Avenue . . . as the location of 'Santa's residence' or anything to do with the fact that the location may be, or is, a place of residence or the location of 'Santa Claus.' "

This prohibition differs from those discussed earlier in two respects. First, it is "a direct regulation of speech . . . based on the content of the material [citations]" (*Times Mirror Co.* v. *City of Los Angeles, supra,* 192 Cal.App.3d at p. 179), rather than an incidental regulation of speech in pursuit of other governmental goals unrelated to freedom of expression.[6] Second, paragraph 3(e) operates as a prior restraint of speech. (*Vance* v. *Universal Amusement Co.* (1980) 445 U.S. 308 [63 L.Ed.2d 413, 100 S.Ct. 1156]; *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652 [119 Cal.Rptr. 468, 532 P.2d 116]; *Pines* v. *Tomson* (1984) 160 Cal.App.3d 370, 395-398 [206 Cal.Rptr. 866].) ■ Such prior restraints bear a heavy presumption against their constitutional validity. (*Vance* v. *Universal Amusement Co., supra,* at p. 317 [63 L.Ed.2d at p. 421].) They are subject to "strict scrutiny" and "may be upheld only if the government establishes that: (1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest, [citations]; (2) the order is narrowly drawn, [citations]; and (3) less restrictive alternatives are not available, [citations]." (*Levine* v. *U.S. Dist. Court for C. Dist. of Cal.* (9th Cir. 1985) 764 F.2d 590, 595.) ■ The City has failed to present a persuasive defense of the challenged order.

The City maintains that the order does nothing more than prevent appellants from advertising the location of their home "as a commercial or amusement-type venture." This characterization of appellants' home as a

---

[6]We reject the City's argument that the speech involved here is commercial speech and thereby entitled to a lesser degree of solicitude. In *Spiritual Psychic Science Church* v. *City of Azusa* (1985) 39 Cal.3d 501 [217 Cal.Rptr. 225, 703 P.2d 1119], the state Supreme Court defined commercial speech as "that which has but one purpose—to advance an economic transaction." (*Id.,* at p. 511.) Whatever else it may be, appellants' expressive activity cannot be characterized as commercial speech under this narrow definition.

commercial enterprise is a running theme through much of the City's argument with the obvious implication, sometimes stated, sometimes not, that appellants are in violation of local zoning ordinances. ▮▮▮▮ This, however, is not an action involving such violations and the order cannot be sustained based on a violation of zoning law.[7] Rather, the City based its action upon Code of Civil Procedure section 731, which authorizes a civil action for abatement of a nuisance, and Civil Code section 3480, which defines nuisance: "[O]ne which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." The City must bear in mind that simply characterizing particular expressions of beliefs as a nuisance does not divest those expressions of their constitutional protections. "[T]he regulation of a communicative activity . . . must adhere to more narrowly drawn procedures than is necessary for the abatement of an ordinary nuisance, . . ." (*Vance* v. *Universal Amusement Co., supra,* 445 U.S. at p. 315 [63 L.Ed.2d at p. 420], fn. omitted.)

▮▮▮ Returning to our discussion of prior restraints we are unable to affirm the restraint in paragraph 3(e) of the judgment. It fails under the three-part test discussed in *Levine.* The first part is whether the activity restrained poses a serious and imminent threat to a protected competing interest. (*Levine* v. *U.S. Dist. Court for C. Dist. of Cal., supra,* 764 F.2d at p. 595.) We have identified the competing interest here as the preservation of the integrity of residential neighborhoods. (*Frisby* v. *Schultz, supra,* 487 U.S. at p. 484 [101 L.Ed.2d at p. 431, 108 S.Ct. at p. 2502].) Although there is evidence that the residential integrity of this neighborhood is impaired by the traffic brought into this neighborhood, we need not decide whether on balance the restraint is justified on this ground, as it so obviously fails the second part of the test.

The second step requires that the prior restraint order be narrowly drawn. This order is not. A restraint on advertising this property as a Santa's residence or tourist attraction is consistent with the ban precluding appellants from accepting any gratuities or otherwise using this private residence as a commercial enterprise. But in paragraph 3(e) the restraint on advertising is so vague as to leave in doubt what communication is restricted. The prohibition against appellants' "private statement[s]" has Orwellian overtones that cannot be countenanced in light of First Amendment freedoms. Additionally, the order is objectionable in that it charges appellants

---

[7] Moreover, a municipality's zoning power, though broad, "is not infinite and unchallengeable; it 'must be exercised within constitutional limits.'" (*Schad* v. *Mount Ephraim* (1981) 452 U.S. 61, 68 [68 L.Ed.2d 671, 680, 101 S.Ct. 2176], quoting *Moore* v. *East Cleveland* (1977) 431 U.S. 494, 514 [52 L.Ed.2d 531, 546, 97 S.Ct. 1932] (conc. opn. of Stevens, J.).)

with responsibility for not only their own speech but that of third parties with whom they purportedly occupy some nebulous agency relationship. Finally, in violation of the third step of the *Levine* test, the City has not shown that this is the least restrictive means of advancing the competing interest of preserving the integrity of a residential neighborhood.

Accordingly, we must conclude that this provision of the consent judgment is constitutionally deficient.

## II

■ Appellants also challenge paragraph 3(d) of the consent judgment. That paragraph bans members of the public from entering or remaining on appellants' property. " 'Members of the public' do not include relatives, bona fide personal friends of the defendants, public employees, deliverymen, and/or public utility personnel, and no more than two (2) monthly visits by terminally ill children." Appellants maintain that this provision violates their First Amendment right of association, their right to privacy guaranteed by article I, section 1 of the State Constitution, as well as being void for vagueness.

The City, by proscribing entry of certain people onto appellants' property, is attempting to regulate an activity protected by the Constitution. (*Coates* v. *City of Cincinnati* (1971) 402 U.S. 611, 616 [29 L.Ed.2d 214, 218-219, 91 S.Ct. 1686].) This restriction of First Amendment freedom must be clearly defined.

"Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' " (*Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 228, 92 S.Ct. 2294], fns. & citations omitted); *Ketchens* v. *Reiner* (1987) 194 Cal.App.3d 470, 477-478 [239 Cal.Rptr. 549].)

The exception proposed to paragraph 3(d), "bona fide personal friends of the defendants," is so vague as to be meaningless. The question of who one's

friends are not only implicates the right to intimate association (*Bd. of Dirs. of Rotary Int'l* v. *Rotary Club* (1987) 481 U.S. 537, 544-545 [95 L.Ed.2d 474, 483-484, 107 S.Ct. 1940]), but is inherently subjective. The City maintains that the parties understood that this provision "relate[d] to the congregating of members of the public at appellants' home and to prohibit tours thereof . . . ." But this is not what the order says, nor can First Amendment rights be the subject of unwritten and, therefore, unenforceable understandings. To allow this would run the risk of the impermissible delegation of basic policy matters to policemen, judges and juries earlier referred to, and would inhibit the exercise of First Amendment freedoms. (*Grayned* v. *City of Rockford, supra,* 408 U.S. at pp. 108-109 [33 L.Ed.2d at pp. 227-228].)

Paragraph 3(d) must, therefore, be stricken from the judgment.

██ The order is affirmed as to paragraphs 3(a), 3(b), 3(c) and 3(f) of the underlying judgment, and reversed as to paragraphs 3(d) and 3(e) which are ordered stricken from the judgment.[8] Each side to bear its own costs on appeal.

George, J., and Goertzen, J., concurred.

---

[8] A partial reversal is permissible in this case because the underlying judgment contains distinct and severable provisions. (Cf. *Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 552 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158]; *In re Marriage of Steinberg* (1977) 66 Cal.App.3d 815, 820 [136 Cal.Rptr. 299]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 642, pp. 624-625.)

Appellants have not challenged paragraph 4 of the consent judgment which, therefore, remains in effect.