**XENIA RURAL WATER
ASSOCIATION,
Appellant,**

v.

**DALLAS COUNTY, Iowa and Gene
Hardy, Appellees.**

No. 88–1059.

Supreme Court of Iowa.

Sept. 20, 1989.

Michael W. Thrall of Nyemaster, Goode,
McLaughlin, Emery & O'Brien, P.C., Des
Moines, for appellant.

David J. Welu, County Atty., Redfield,
for appellees.

Claus H. Bunz of Bunz Law Firm, Man-
ning, for amicus curiae, Iowa Rural Water
Ass'n, Inc.

Mary F. Whitman, Des Moines, for ami-
cus curiae, Iowa State Ass'n of Counties.

Considered by McGIVERIN, C.J., and
HARRIS, SCHULTZ, CARTER, and
SNELL, JJ.

CARTER, Justice.

Plaintiff, Xenia Rural Water Association, appeals from a judgment of the district court dismissing its action against Dallas County and the county engineer. That action requested a writ of mandamus compelling condemnation proceedings for the taking of its waterlines located on private property or, in the alternative, an award of money damages under a theory of inverse condemnation.

A written agreement between the parties required the water association to locate its waterlines outside of the area affected by a subsequent enlargement of the county's road right-of-way. Because, at the time of this agreement, the issues now raised concerning an unconstitutional taking were fairly justiciable and not capable of ascertainment by reference to established law, we conclude that the water association having agreed to this requirement is now estopped from challenging the action of the county. That conclusion requires affirmance of the district court's judgment.

In 1977, a group of rural residents living east of Woodward, Iowa, experienced a shortage of potable water and drying up of their wells. As a result of this condition, interest developed in establishing a collective water system. To promote that objective, Xenia Rural Water Association (Xenia), a nonprofit corporation, was formed.

Xenia proposed to construct approximately 200 miles of water pipeline, most of which was to be located in Dallas County. As one requirement for financing the project, the Farmers Home Administration required Xenia to place at least seventy-five percent of the pipeline on private property. That federal lending agency advised Xenia that it probably would not be financially responsible for later moving the pipelines located on private property in the event they were disturbed by subsequent road condemnation.

Upon acquisition of a sufficient amount of private easements, Xenia hired an engineering firm to prepare plans and specifications for the project. At this time, it became apparent that Xenia would require the permission of Dallas County to lay the pipeline under certain county roads running perpendicular to the project. In addition, because of difficulty in obtaining easements from private property owners in some locations, Xenia wanted to lay certain portions of its waterline in the county roadway running parallel to the road.

In September 1981, Xenia's engineering firm submitted the project plans to Dallas County Engineer, Gene Hardy, one of the defendants in this action. After examining the plans, Hardy notified Xenia's engineers that it would be necessary to revise the plans so as to provide for a fifty-five-foot setback from the centerline of the county right-of-way for all waterlines laid on private property. Xenia's engineers made that revision in December 1981 and resubmitted the plans.

The plans as finally submitted provided: COUNTY ROAD SETBACK—All pipelines installed parallel to county roads shall be at least 55 feet from the road centerline except to avoid natural or manmade obstructions.

When Hardy received the revised plans, he sent Xenia's engineers an application form entitled "application for approval of underground construction on county right-of-way." The application form, drafted by the county engineer's office, stated in part:

The applicant agrees that the following stipulations shall govern this permit.

1. The applicant will at any time subsequent to placing the water line, at his own expense, relay, reconstruct or encase his lines as may become necessary to conform to new grades, alignment or widening right-of-way, resulting from maintenance or construction operations by the county irrespective of whether or not additional right-of-way is acquired in connection with such highway improvement. The applicant agrees to do this promptly on order by the county, and without cost to the county....

Hardy added a handwritten note to the bottom of the application form stating:

Approval granted based on plans for Xenia Rural Water Association dated 11–18–81 & revised 12–22–81.

The December 22, 1981, revision to which this refers was the fifty-five-foot setback provision. Xenia's representatives signed the application and submitted it in February 1982. It was thereafter signed by Hardy and the chairman of the county board of supervisors.

In constructing the pipeline, Xenia, in contravention of its agreement, placed some of the pipeline located on private property less than fifty-five feet from the road centerline. Bernard Lewiston, president of Xenia's board of directors, testified at trial that this was done at the request of certain individual property owners. These owners had granted Xenia open easements to cross their property but had informally requested that Xenia keep the waterline as close to property line fences as possible to minimize damage to existing tile lines. Such placement was not expressly required by the written easement agreements with these owners.

In February 1987, Xenia was officially notified that the county planned a road improvement project known as Project H-34. The project plans indicated that approximately six miles of county road would be reconstructed, resulting in the right-of-way being widened from thirty-three feet to fifty feet. Some of Xenia's pipeline on adjacent private property had been laid within this expanded right-of-way area.

After receiving notice of the project, Xenia relocated the affected sections of its pipeline. In June 1987 (approximately two months prior to the completion of the relocation project), Xenia filed a petition for writ of mandamus asking the district court to compel the county to begin condemnation proceedings for the relocation of the waterlines located on private property. Prior to trial the petition was amended so as to also request, in the alternative, a demand for money damages from the county based on a theory of inverse condemnation as defined in *Scott v. City of Sioux City*, 432 N.W.2d 144, 145 (Iowa 1988).

At trial, Hardy testified that it had been the policy of Dallas County to pay for the relocation of water pipeline located on private property if required by a county road

widening project. He indicated that this was not the case, however, for pipeline laid in violation of a setback requirement agreed to by the pipeline owner. He also testified that the county would not have approved Xenia's application for locating a portion of its pipeline in the county right-of-way absent its agreement to a fifty-five-foot setback of the pipe laid on private property.

After hearing the evidence, the trial court entered a judgment in favor of Dallas County. It concluded the application signed by Xenia and county representatives constituted an agreement that Xenia would place its pipeline a minimum distance of fifty-five feet from the centerline. The trial court further found that there was no reason the pipeline could not have been constructed by Xenia in that manner other than its own convenience or that of its members. The trial court concluded that Xenia's failure to abide the conditions to which it had voluntarily agreed was the reason it was forced to relocate the waterlines on private property—a circumstance which should preclude it from forcing condemnation or from recovering money damages from the county.

The area of controversy involved on this appeal bears some similarity to the issue before this court in *Rural Water System No. 1 v. Sioux County*, 272 N.W.2d 466 (Iowa 1978). In that case, as in the present case, the county sought to avert a claim for relocation costs by relying on the terms of an agreement authorizing a rural water district to locate a portion of its pipeline in the public roadway. Xenia and the county each contend that decision supports its respective position in the present case.

The agreement in *Rural Water System* provided that "applicant will at any time subsequent to placing the ... pipe line ... and at his own expense, relay, reconstruct or encase his lines as may become necessary to conform to new grades, alignment or widening." *Id.* at 467. The trial court in *Rural Water System* determined that this language was ambiguous and, because it was drafted by the county, should only be interpreted as applicable to that portion

of the waterline placed in the public roadway. On appeal that result was affirmed.

*Rural Water System* involved the interpretation of indefinite contractual language concerning who was to pay for certain water pipe relocation. In contrast, the agreement in the present case contains specific language requiring Xenia to locate the waterlines placed on private property outside the location of the expanded right-of-way. The district court found, and we agree, that this requirement was a negotiated condition of the agreement and a quid pro quo for allowing Xenia to place a portion of its water pipes in the public roadway. We do not believe our holding in the *Rural Water System* case defeats the right of a condemnor to assert a defense of waiver or estoppel based on an agreement with the condemnee. The right to assert such a defense has been recognized in proper situations. *See* 26 Am.Jur.2d *Condemnation* § 494 (1966).

 We conclude that, if an agreement such as the one involved in *Rural Water System* is drafted so as to require the condemnee to relocate lines on private property at its own expense, such provision, if otherwise valid, is a waiver of the condemnee's right to later claim a compensable taking has occurred. *See Department of Highways v. United Gas Pipe Line Co.*, 258 F.2d 359 (5th Cir.), *cert. denied*, 358 U.S. 910, 79 S.Ct. 235, 3 L.Ed.2d 230 (1958). Similarly, defendants urge, and we agree, that a condemnee's failure to abide the terms of a setback requirement in which it agrees to place a pipeline outside of the area affected by a road-widening project in exchange for permission from public authorities to locate a portion of the pipeline on public lands, estops the condemnee from claiming a taking as to pipe laid in violation of the agreement. That conclusion is buttressed by the fact that, under the circumstances presented, any compensation exacted from the condemnor for the taking would simultaneously generate breach of contract damages in equal amount against the condemnee.

Xenia has conceded that it is liable for the costs of moving that pipe laid within the original thirty-three-foot right-of-way. It seeks to visit on the county the costs of the waterlines located on private property which were moved as a result of the county's widening the right-of-way to fifty feet. Our holding now establishes Xenia's liability for those costs as well.

Xenia urges that whatever validity might attach to defendants' estoppel claim under traditional contract law, the decision in *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), renders the setback agreement invalid and unenforceable. In *Nollan*, landowners sought a permit from a public regulatory agency to demolish their beachfront bungalow and build a house on the same site. The agency issued the permit on condition the owners grant an easement in favor of the public to pass across the beach along the water side of their lot. The Court held that requiring this easement as a condition for grant of the permit was an uncompensated taking. The Court indicated that such conditions, to be valid, must relate directly to the public burden created by the regulated activities authorized by the permit. 483 U.S. at 834, 107 S.Ct. at 3146, 97 L.Ed.2d at 687.

 Xenia argues that under the rationale of *Nollan* the county cannot enforce the setback requirements in the present case because those requirements bear no relationship to any burden created by the portion of the pipeline laid in the public roadway. Whether the doctrine applied in *Nollan* with respect to permits for state-regulated activities also extends to the grant of easements or licenses over state-owned lands is, we believe, less than clear. In our view, this question need not be decided in the present case. In the absence of an authoritative legal pronouncement that the county could not exact the setback requirement under Iowa Code sections 320.5 and 320.8 (1981) as a condition for its consent to use public lands, the parties were free to bargain on that issue.[1] Courts should support agreements which have for their object the amicable settlement of doubtful rights of the parties.

---

1. These statutes provide as follows:

 *320.5 Term of grant.* Such grants shall be

on such reasonable conditions as the board may

*Wright v. Scott,* 410 N.W.2d 247, 250 (Iowa 1987); *Messer v. Washington Nat'l Ins. Co.,* 233 Iowa 1372, 1380–81, 11 N.W.2d 727, 732 (1943).

We believe the present case is somewhat analogous to the situation in *City of Cedar Rapids v. McConnell–Stevely–Anderson Architects and Planners,* 423 N.W.2d 17 (Iowa 1988). In that case, we held that an applicant for rezoning who agreed to certain conditions in an effort to convince the city to grant the application was estopped from later claiming that the conditions were invalid. We believe the claim of estoppel in the present case is even stronger than that presented in *City of Cedar Rapids.* We find that no basis has been shown for invalidating the setback requirement and that its presence in the agreement estops Xenia from now claiming compensation for a taking of its property. The judgment of the district court is affirmed.

AFFIRMED.

exact, and on such as the general assembly may hereafter prescribe. Grants for gas or water mains shall not exceed twenty years.

*320.8 Penalty.* Failure to comply with any of the conditions of said grant, whether made such by statute or by agreement, or the laying of any such mains, or the constructing of any such cattleways, without having secured the grant of permission as provided by law shall be deemed a simple misdemeanor. It shall be the duty of the state department of transportation and the board of supervisors, as regards the highways under their respective jurisdictions, to enforce the provisions of this section and the laws relating thereto.