LEROY LAND DEVELOPMENT
CORPORATION, a Nevada
Corporation, Plaintiff,

v.

TAHOE REGIONAL PLANNING
AGENCY, Defendant.

No. CV–R–81–202–ECR.

United States District Court,
D. Nevada.

Feb. 9, 1990.

Thomas J. Hall, Reno, Nev., for plaintiff.

Louis R. Doescher, Shaw, Heaton, Doescher & Owen, Ltd., Carson City, Nev., for defendant.

ORDER

EDWARD C. REED, Jr., Chief Judge.

Before this Court is plaintiff's motion seeking a partial discharge of its duties pursuant to a Settlement Agreement and Release dated December 17, 1983 which was incorporated into a Stipulated Judgment filed in this Court on June 16, 1983. Plaintiff also seeks a declaration of its

rights and obligations under the Stipulated Judgment.

The pertinent history of this case is as follows. Plaintiff, Leroy Land Development Company ("Leroy"), owns 191 condominium lots ("The Bitterbrush Project") in Incline Village, Nevada.[1] The defendant agency, the Tahoe Regional Planning Agency ("TRPA"), was originally created in 1969 pursuant to an interstate compact between Nevada and California. This Compact was extensively amended in 1980 whereby TRPA was authorized to create regional plans to govern land use in the Lake Tahoe Basin. After this amendment, TRPA notified Leroy that Bitterbrush was not exempt from the amended Compact and its new ordinances, and that project approval, pursuant to the new ordinances, must be obtained before the construction of individual condominiums could begin. Leroy applied to TRPA for a finding of vested rights on Bitterbrush, and after denial, sought an alternative writ of mandate in the Second Judicial District Court for the State of Nevada on August 19, 1981. Leroy's petition was subsequently removed to this Court by TRPA. On June 29, 1982, this Court entered summary judgment for TRPA. 543 F.Supp. 277. Leroy appealed the matter to the United States Court of Appeals for the Ninth Circuit. On December 17, 1982, the parties entered into a Settlement Agreement and Release which resolved the action and the appeal.

The Settlement Agreement and Release required Leroy to perform certain on-site water retention measures and on-site revegetation at a cost not to exceed $40,-000.00, and to perform certain off-site mitigation measures not to exceed $750,000.00. These off-site mitigation measures can be divided into five categories:

(1) the installation of energy dissipater devices;

(2) the installation of stabilization devices for the cut slope located on land of the Incline Village General Improvement District (IVGID);

(3) the provision of secondary access to the Bitterbrush Project;

(4) the acquisition of adjacent or nonadjacent lands for open space;

(5) the mitigation of any additional items of impact identified in the Environmental Impact Statement prepared by Sharp, Krater & Associates.

The Settlement Agreement in turn required TRPA to authorize the construction of the remaining Bitterbrush Units and its appurtenant facilities, and to include the Bitterbrush project in its new Regional Plan. The Agreement also required TRPA to cooperate in Leroy's efforts to obtain building permits from Washoe County, and to generally work in concert with Leroy to effectuate the purposes and intent of the Agreement.

Currently, 20 units in the Bitterbrush Project have been sold, 27 units are under construction, 138 are undeveloped, and 18 have been allocated to greenbelt use. Leroy apparently possesses valid Washoe County building permits for the units, although the provision of alternate access, and cut slope stabilization devices is required by agreement after the construction of the fifty-first unit. The Environmental Impact Statement required by the Settlement Agreement has been completed and accepted by TRPA.

In any event, Leroy argues that it is no longer required to comply with the off-site mitigation measures of installing cut slope stabilization devices, and of acquiring adjacent or non-adjacent lands since these measures could not be constitutionally required by TRPA.[2] Leroy's principal argument is that the off-site mitigation measures violate the standards set forth by the United States Supreme Court in *Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). Specifically, Leroy argues that *"Nollan* re-

---

1. Leroy's Motion claims that Leroy is the legal owner in fee simple of 191 units. However, the affidavit of Alan Roselinsky, the Vice President of Leroy, indicates that Leroy is the owner of 183 units.

2. It should be noted that the Settlement Agreement and Stipulated Judgment are governed by the law of the State of Nevada. Settlement Agreement Paragraph IV (I).

quires a *direct* connection between the burden imposed by the regulatory condition and the benefit received by the property owner," and that the off-site mitigation measures do not benefit Leroy. Plaintiff's Motion at 5–6 (emphasis in original).

 Leroy misstates the nexus expressed in *Nollan.* The nexus required by *Nollan* is not between the burden imposed by the *regulatory condition* and the *benefit received by the property owner,* but rather between the *regulatory condition* and the *governmental purpose* underlying the condition. 483 U.S. at 836, 837, 107 S.Ct. at 3147–48, 3148. Consequently, it is irrelevant that the off-site mitigation measures do not benefit Leroy. Nevertheless, this Court finds that the off-site mitigation measures lack the nexus required by *Nollan* for substantial advancement of a governmental purpose. *Nollan* seems to require a fairly close nexus between the regulatory condition and the underlying governmental purpose. *Id.* at 837–41, 107 S.Ct. at 3148–50. Assuming that the purpose behind the TRPA regulations is the preservation of the natural beauty and economic productivity of the Lake Tahoe Basin, the off-site mitigation measures do not substantially advance this purpose within the standards of *Nollan.* This is because the substantial advancement nexus should be considered in conjunction with the property in question. *Id.* at 835, 838, 107 S.Ct. at 3147, 3148–49. The nexus in this case must therefore be between the regulatory conditions (the offsite mitigation measures) and the governmental purpose as it relates to the property in question (preserving the beauty of the Lake Tahoe Basin from any burden created by the construction of Bitterbrush). *Id.* at 838, 107 S.Ct. at 3148–49. Considered in this context, the requirement of installing stabilization devices for the cut slope created by others on a third party's land, and of acquiring adjacent or nonadjacent lands for open space go far beyond alleviating any burden which the Bitterbrush project may impose on the Basin. Although these off-site mitigation measures would in fact preserve the natural beauty and economic productivity of the Lake Tahoe Basin, Leroy cannot be singled out to bear the burden of TRPA's attempts to achieve this purpose. *Id.* at 835, n. 4, 107 S.Ct. at 3147, n. 4.

 TRPA argues that Leroy is bound by the terms of the Settlement Agreement regardless of whether some of the terms are not constitutionally enforceable, since such agreements should be viewed as contracts. However, a party can be bound by a consent decree or settlement agreement containing unconstitutional terms only if the Record discloses a clear and compelling relinquishment by the plaintiff of its constitutionally protected rights. *City of Glendale v. George,* 208 Cal.App.3d 1394, 256 Cal.Rptr. 742, 744 (1989). Furthermore, "[t]he relinquishment of a right necessarily implies knowledge of the right being relinquished." *Id.,* (citing *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 147, 87 S.Ct. 1975, 1987, 18 L.Ed.2d 1094 (1967), *overruled on other grounds, Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). This Court must " 'closely scrutinize waivers of constitutional rights, and indulge every reasonable presumption against a waiver.' " *Id.,* (quoting *Sambo's Restaurants, Inc. v. City of Ann Arbor,* 663 F.2d 686, 690 (6th Cir.1981)). Given this rather stringent standard, this Court must conclude that although Leroy made a fairly informed decision at the time of the Settlement Agreement, it did not waive its right to object to terms that could not be constitutionally enforced.

 Leroy argues that both parties should be bound by the remaining provisions of the Settlement Agreement that are constitutionally enforceable since the Agreement is severable. " 'Whether a contract is entire, or separable into distinct and independent contracts, is a question of the intention of the parties, to be ascertained from the language employed and the subject matter of the contract.' " *Sprouse v. Wentz,* 781 P.2d 1136, 1140 (Nev.1989) (quoting *Linebarger v. Devine,* 47 Nev. 67, 72, 214 P. 532 (1923)). Although the structure of the Settlement Agreement at first blush suggests that the parties did not intend for the off-site mitigation provisions

to be severable from the rest of the Agreement, Paragraph IV (J) states unequivocally: "Every portion of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality of invalidity shall not affect the validity or the remainder of this Agreement." Consequently, in the absence of any evidence of a contrary intent, this Court must interpret Paragraph IV (J) literally so that the Settlement Agreement is valid except for those provisions that are not constitutionally enforceable.

■ Leroy further argues that it should be excused from making provisions for secondary access to Bitterbrush based on the doctrine of impossibility. Specifically, Leroy argues that such access is impossible to obtain because IVGID has refused Leroy's request for an access easement. "Generally, the defense of impossibility is available to a promisor where his performance is made impossible or highly impractical by the occurrence of unforeseen contingencies, but if the unforeseen contingency is one which the promisor should have foreseen, and for which he should have provided, this defense is unavailable to him." *Nebaco, Inc. v. Riverview Realty Co.,* 87 Nev. 55, 57, 482 P.2d 305 (1971). Furthermore, "[i]f the foreseeable contingency is provided for in the contract, its occurrence does, of course, provide an excuse for non-performance." *Id.* Therefore, since paragraph I (C)(3) of the Stipulated Judgment provides for an alternative if it is determined that the acquisition of secondary access becomes impossible or overly difficult (and since the parties agree that secondary access has become overly difficult), Leroy is excused from the requirement of obtaining such access. Instead, in accordance with paragraph I (C)(3), TRPA may employ the $100,000.00 to mitigate environmental problems as determined by the Environmental Impact Statement, provided that these mitigation measures are constitutional under the aforementioned standards.

IT IS, THEREFORE, HEREBY ORDERED that Leroy's Motion to Abate and Partially Release and Discharge the Deed of Trust and to Declare Rights and Obligations Under the Stipulated Judgment is *GRANTED* with respect to releasing Leroy from Obligations I (C)(2) (the construction of stabilization devices for the cut slope located on lands of the Incline Village General Improvement District along the north side of Ski Way and Fairview Blvd., southerly of and adjacent to the Bitterbrush Project), and I (C)(4) (the acquisition of lands either adjacent or non-adjacent within the Tahoe Basin under TRPA directive). IT IS ALSO HEREBY ORDERED that Leroy shall be released from the requirement of the provision of secondary access pursuant to Paragraph I (C)(3), and instead, pursuant to the same Paragraph, TRPA may employ the $100,000.00 for the mitigation of environmental problems as determined by the Environmental Impact Statement to the extent that these mitigation measures are consistent with this Order. TRPA may not utilize the $100,000.00 for the acquisition of lands as set forth in Paragraph I (C)(4). The Stipulated Judgment shall remain enforceable in all other respects. This Court need not address any remaining factual disputes at this time since both parties have indicated that they will be able to privately resolve these disputes.