**LEROY LAND DEVELOPMENT, a Nevada Corporation, Plaintiff–Appellee.**

**v.**

**The TAHOE REGIONAL PLANNING AGENCY, a separate legal entity created pursuant to an interstate Compact between the States of California and Nevada, et al., Defendant–Appellant.**

**No. 90–15364.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 1991.

Decided July 9, 1991.

Gary A. Owen, Crowell, Susich, Owen & Tackes, Carson City, Nev., for defendant-appellant.

Thomas J. Hall, Reno, Nev., for plaintiff-appellee.

Timothy V. Kassouni, Pacific Legal Foundation, Sacramento, Cal., for amici curiae-appellees.

John K. Van de Kamp, Atty. Gen., Richard M. Frank, Acting Asst. Atty. Gen., Daniel L. Siegel and Michael L. Crow, Deputy Attys. Gen., Sacramento, Cal., for amici curiae-appellant State of Cal., et al.

Before SCHROEDER and FARRIS, Circuit Judges, and DUMBAULD,[*] District Judge.

SCHROEDER, Circuit Judge:

■ The principal issue we must resolve in this appeal is whether a land developer, who years ago settled a dispute with the appropriate governmental authority over issuance of a building permit, may now challenge the central condition of the settlement on the ground that unilateral imposition of such a condition by the authority would violate the principles enunciated in *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). The Supreme Court there articulated a two-part test to determine if a land-use regulation constitutes an unconstitutional taking without just compensation. The district court in this case ruled that the challenged provision of the settlement resulted in such an unconstitutional taking. *Leroy Land Dev. Corp. v. Tahoe Regional Planning Agency*, 733 F.Supp. 1399, 1401 (D.Nev.1990). We hold that the obligation incurred under the settlement agreement could not constitute a governmental "taking" and therefore we reverse.

The plaintiff-appellee is Leroy Land Development Corporation ("Leroy"), a company currently engaged in the development of a condominium project off the shores of Lake Tahoe, Nevada. The appellant-defendant is the Tahoe Regional Planning Agency ("TRPA"), a regulatory agency with jurisdiction over the Lake Tahoe Basin. TRPA was created in 1969 by interstate compact between California and Nevada, and was approved by Congress in response to growing concern about the adverse environmental effects of increased population and development in the Lake Tahoe Basin. *See California v. Tahoe Regional Planning Agency*, 766 F.2d 1308, 1310–12 (9th Cir.1985) (explaining history and authority of TRPA). TRPA was charged with adopting a regional plan and promulgating regulations that would allow limited development with an eye toward preserving the lake.

The 1969 compact between California and Nevada was extensively amended and received congressional approval in 1980. The 1980 amendments expanded TRPA's authority by subjecting a wider range of projects to TRPA review. The amendments also provided that TRPA could approve a project only if a detailed environmental impact statement indicating compliance with TRPA ordinances and regulations [1] was obtained and after specific written findings were made by TRPA. TRPA could issue building permits only to those developers who meet these requirements.

This litigation had its genesis after the 1980 amendments, when TRPA notified Leroy that the remaining phase of its condominium development project (called "Bitterbrush") was subject to the newly-enacted project review requirements. Leroy sought injunctive relief against TRPA, contending that it had a vested right to complete construction of Bitterbrush pursuant to prior agency approval. *See Leroy Land Dev. Corp. v. Tahoe Regional Planning Agency*, 543 F.Supp. 277 (D.Nev.1982). While appeal to this court was pending, the parties agreed to settle that dispute with the "Settlement Agreement and Release" at issue here.

The settlement agreement was executed December 17, 1982. It provided that Leroy could construct 185 of the proposed 203 condominium units, in exchange for per-

---

[*] Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. In large part, TRPA's regulations require a developer to take measures to mitigate the adverse environmental impact of the development. Frequently, these measures include off-site, as well as on-site obligations. *See, e.g.,* Tahoe Regional Planning Agency, Code of Ordinances chs. 20, 35, 37.2.I and 93.

forming specified on-site and off-site mitigation measures. The off-site mitigation measures called for: (1) the installation of energy dissipater devices; (2) the installation of stabilization devices for the cut slope located on land adjacent to Bitterbrush; (3) the provision of secondary access to Bitterbrush; (4) the acquisition of adjacent or non-adjacent lands for open space; and (5) the mitigation of any additional items of impact identified by the environmental impact statement. These measures were intended to minimize the adverse effects of the development by preventing erosion elsewhere in the Lake Tahoe Basin. Leroy agreed to begin the off-site mitigation measures upon completion of the 50th unit. The settlement agreement provided that the district court would retain jurisdiction for purposes of enforcement and interpretation of the agreement.

In 1987, five years later, the Supreme Court decided *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). In *Nollan*, the Supreme Court examined the extent to which an agency could regulate private property without triggering an unconstitutional taking under the fifth amendment. The Supreme Court stated that a land-use regulation would not constitute a taking so long as it substantially advanced a legitimate state interest and did not deny the property owner economically viable use of the property. 483 U.S. at 834, 107 S.Ct. at 3147 (quoting *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)). The Court applied this analysis to the California Coastal Commission's conditioning of a building permit on the property owners' agreement to allow the public an easement to pass across the property owners' beach. The Court concluded that the easement condition was not a valid exercise of state power because it was unrelated to the legitimate public purposes underlying the building permit requirement. *Id.* 483 U.S. at 835–39, 107 S.Ct. at 3147–50.

After *Nollan* was decided, Leroy filed this proceeding in the form of a motion to abate the mitigation conditions. In effect, Leroy sought to retain its permit to construct Bitterbrush and obtain a ruling by the court that it was not bound by the mitigation provisions. Leroy claimed that it need not comply with the off-site mitigation measures because they constituted an unconstitutional taking under *Nollan*.

The district court agreed that the requisite nexus between the off-site mitigation measures and advancement of a governmental purpose was lacking. 733 F.Supp. at 1401–02. The district court acknowledged that the mitigation measures would help preserve the Lake Tahoe Basin area, but stated that Leroy could not be "singled out to bear the burden of TRPA's attempts to achieve this purpose." *Id.* at 1401. Accordingly, the court declared the mitigation provisions unconstitutional, severed those provisions from the body of the settlement agreement, and declared the remaining portions of the agreement enforceable. *Id.* at 1401–02. This appeal by TRPA followed.

The threshold issue is whether, assuming arguendo that the mitigation provisions would constitute a taking under *Nollan* if imposed unilaterally by TRPA, they can be viewed as a "taking" when consented to as a part of a settlement agreement. We hold that they cannot. The mitigation provisions at issue here were a negotiated condition of Leroy's settlement agreement with TRPA in which benefits and obligations were incurred by both parties. Such a contractual promise which operates to restrict a property owner's use of land cannot result in a "taking" because the promise is entered into voluntarily, in good faith and is supported by consideration. Indeed we have found only one case in which an agreement negotiated before *Nollan* was challenged as a "taking" after *Nollan*, and it reached the same conclusion we reach. *See Xenia Rural Water Ass'n v. Dallas County*, 445 N.W.2d 785, 788–89 (Iowa 1989) (negotiated setback requirement not a taking where part of agreement between parties). To allow Leroy to challenge the settlement agreement five years after its execution, based on a subsequent change in the law, would inject needless uncertainty and an utter lack of finality to settlement agreements of this kind. We therefore

hold that a takings analysis as articulated in *Nollan* is inapplicable where, as here, parties choose to terminate or avoid litigation by executing a settlement agreement supported by consideration.

█ We cannot accept Leroy's contention that by agreeing to the continued jurisdiction of the district court over the settlement agreement, the parties also agreed that this kind of *ex post facto* challenge could be mounted. The agreement stated that the district court retained jurisdiction for the purpose of enforcing and interpreting the agreement. Such enforcement provisions are common in settlement agreements. *See* F. James & G. Hazard, Civil Procedure ¶ 2.23 (1985). They do not, however, permit a party to renounce the settlement agreement based on subsequent changes in the law.

█ Moreover, even if the provisions of this particular agreement could be interpreted to authorize this belated challenge, we would not agree with Leroy's position that they would constitute an impermissible taking under *Nollan.* The district court held that the off-site mitigation provisions were not reasonably related to the agency's purpose of mitigating any adverse environmental effects caused by the construction of Bitterbrush. This was because the provisions required off-site measures to stabilize the land of third parties. 733 F.Supp. at 1401.

█ Under *Nollan,* the government may impose land-use regulations so long as the regulations substantially advance legitimate government interests and do not deny the owner economically viable use of the land. 483 U.S. at 834, 107 S.Ct. at 3147. In *Nollan,* the Court examined the nexus between the asserted government interest and the agency's regulation, and concluded that the regulation failed to further the stated government interest. *Id.* at 836–37, 107 S.Ct. at 3148–49. Here, however, the relationship between the mitigation provisions and TRPA's regulations is quite clear.

The parties agree that the purpose of the interstate compact creating TRPA is to minimize the adverse effects of urbanization on the Lake Tahoe Basin's ecological system. Of particular importance is preserving the Lake's water quality, which is deteriorating due to erosion and pollution caused by development. *See California v. Tahoe Regional Planning Agency,* 766 F.2d at 1316. Leroy's property is a high erosion hazard and its impervious surface land coverage exceeds TRPA's limits; the combination creates a potentially serious erosion and drainage problem. The off-site mitigation provisions at issue here include the installment of stabilization devices, the provision of secondary access to the development, and the acquisition of additional land to reduce surface coverage. Such measures would ameliorate erosion, destabilization and other adverse environmental effects caused by Leroy's development and thus directly further the governmental interest underlying the application of the relevant TRPA regulations to Leroy's development.

The district court's decision is REVERSED.