Filed 6/6/13  LiMandri v. Wildman, Harrold et al. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CHARLES S. LiMANDRI, | B234460 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC449272) |
| v. | |
| WILDMAN, HARROLD, ALLEN & DIXON, LLP, et al., | |
| Defendants and Appellants. | |
| CHARLES S. LiMANDRI, | B237158 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC449272) |
| v. | |
| SHANNA MOAKLER, | |
| Defendant and Appellant. | |

APPEALS from judgments of the Superior Court of Los Angeles County. Michael C. Solner, Judge.  Affirmed.

Law Offices of James W. Spertus, James W. Spertus, Ezra D. Landes for Defendants and Appellants Wildman, Harrold, Allen & Dixon, LLP, and James D. Nguyen in Case No. B234460.

The Avanzado Law Firm, Melvin N.A. Avanzado, Ailleen R. Gorospe for Defendant and Appellant Shanna Moakler in Case Nos. B234460 and B237158.

Law Offices of Charles S. LiMandri, Charles S. LiMandri, Teresa Mendoza for Plaintiff and Appellant Charles S. LiMandri in Case No. B234460 and Plaintiff and Respondent Charles S. LiMandri in Case No. B237158.

_____

This opinion resolves four appeals stemming from litigation brought by Attorney Charles LiMandri, who alleges that defendants improperly revealed to the media private matters encompassed by two confidentiality agreements that the parties signed while settling litigation. The appeals address the trial court's rulings on defendants' motions to strike the complaint as a Strategic Lawsuit Against Public Participation (SLAPP). (Code Civ. Proc., § 425.16.)[1] We affirm the trial court's judgment in all four appeals.

## BACKGROUND COMMON TO ALL FOUR APPEALS

Charles LiMandri was the attorney for Carrie Prejean, a former Miss California USA. A controversy erupted in April 2009, when Prejean expressed her sentiments about traditional marriage during the Miss USA pageant.[2] Several pageant judges said afterward that Prejean lost (coming in second) because of her answer. Prejean's statements were widely reported in the national media.

Among those leading subsequent personal attacks on Prejean were defendants Shanna Moakler and Keith Lewis, executive directors of the Miss California USA pageant.[3] As the controversy escalated, the owner of the Miss Universe Organization, Donald Trump, admitted that Prejean's views "probably did cost her the crown," but he refused to strip her of her title as Miss California. Moakler resigned her post to protest Trump's decision, but continued to publicly criticize Prejean.

Prejean began negotiations with a publisher to write a book about her experience as Miss California. On June 10, 2009, Prejean was abruptly terminated from her reign as

---

[1] Undesignated statutory references in this opinion are to the Code of Civil Procedure.

[2] Asked whether every state should legalize same-sex marriage, Prejean replied, "Well, I think it's great that Americans are able to choose one way or the other. We live in a land where you can choose same-sex marriage or opposite marriage. You know what, in my country, in my family, I do believe that marriage should be between a man and a woman, no offense to anybody out there. But that's how I was raised and I believe that it should be between a man and a woman. Thank you."

[3] Defendant Lewis is not a party to this appeal.

Miss California. Represented by Attorney LiMandri, Prejean sued Moakler, Lewis and others for defamation; public disclosure of private facts; religious discrimination and emotional distress. One of the defendants filed a cross-complaint for breach of contract, claiming that Prejean violated her contractual obligation to abide by high ethical and moral standards; her promise that she has never been photographed in a lewd, compromising or sexually suggestive manner; her duty to appear at events as Miss California; and her promise to repay a loan.

*The Settlement Agreement*

The parties to the litigation, their attorneys, and their insurers participated in a mediation at JAMS in New York. Participants signed a JAMS confidentiality agreement. The law firm of Wildman, Harrold, Allen & Dixon and its partner James D. Nguyen (collectively, the Law Firm) represented defendant Keith Lewis in the mediation. In the presence of his client Lewis (though not the other defendants) Nguyen showed Prejean, LiMandri and the mediator a compromising video and photographs of Prejean.

The mediation resulted in a confidential settlement on November 3, 2009, in which the parties resolved all claims against each other (the Settlement Agreement). LiMandri is a party to the Settlement Agreement; signed it; and is entitled to receive $110,000 from it. The Settlement Agreement includes a promise by defendants and their attorneys that the compromising material would be destroyed and its existence would never be revealed.[4] The parties and their attorneys covenanted to maintain "the strictest confidentiality" regarding the Settlement Agreement. "The Prejean Parties" (which

---

[4]     The provision reads, "Each of the pageant-related parties, and their counsel shall destroy any and all tangible copies of, and eliminate and purge all electronic copies of, those certain video and photographic materials . . . . Further, *none of the pageant-related parties shall ever, directly or indirectly, reveal that such material exists or existed; the contents of such material; the nature of such material; and/or, the source of such material.* Each party in the possession of such photographic or video material shall subscribe a sworn affidavit affirming the destruction and/or purging (as applicable) of such material." (Italics added.)

includes LiMandri as a party) are entitled to seek damages for "any violation" of the nondisclosure provision.

### Events Surrounding the Settlement Are Made Public

One day after the settlement was reached, TMZ reported that "Carrie Prejean nets a big fat zero in her settlement with the folks at Miss California USA, sources tell TMZ. Carrie and the Pageant officials have settled their lawsuits against each other and the terms were confidential . . . until now." Later, TMZ reported that Prejean demanded more than a million dollars "until the lawyer for the Pageant showed Carrie an XXX home video of her handiwork. . . . We're told it took about 15 seconds for Carrie to jettison her demand and essentially walk away with nothing." The reports mention that defendants agreed to pay LiMandri around $100,000.

Details of the settlement negotiations quickly made their way through the gossip sphere. One Internet site wrote that Prejean settled "because [the Law Firm] produced a homemade Prejean sex tape into evidence [*sic*]." CNN reported that a "source familiar with the lawsuits' settlement" confirmed that the settlement was prompted by the revelation of the sex tape. On November 5, 2009, TMZ posted additional details about the mediation, saying "When the video started playing, Carrie's first reaction was 'that's disgusting' . . . and Carrie denied it was her. Then, the camera angle changed . . . and panned up to her face. She was caught red-handed . . . so to speak. Carrie was rendered speechless . . . ." TMZ also reported that Prejean's mother was in the mediation room when the tape was played by the Law Firm, and "was in shock—instantly turning sheet white" according to unnamed "sources."

On November 9 and 10, 2009, Prejean made media rounds while promoting her just-published book. She was questioned about the compromising video, describing it as a youthful indiscretion that she sent to a boyfriend when she was 17 and "the biggest mistake of my life." Prejean expressed embarrassment about the video, and railed against the campaign to silence her opinions about same-sex marriage.

On November 11, 2009, counsel for the Miss Universe Organization sent a letter to LiMandri regarding the breaches of confidentiality. The letter acknowledges the

settling defendants' obligation to pay LiMandri $110,000 in attorney fees, but sought (and received) a ratification from Prejean of the Settlement Agreement. Though Prejean agreed not to disaffirm the Settlement Agreement, no one gave up the right to sue for a breach of its provisions.

### *LiMandri Sues Defendants for Publicly Disclosing Settlement Discussions*

One year later, on November 10, 2010, LiMandri filed suit for breach of the Settlement Agreement; breach of the JAMS confidentiality agreement; fraudulent inducement; and breach of the implied covenant of good faith and fair dealing. Among the named defendants are Shanna Moakler, the Law Firm, its partner Nguyen, and their client Lewis. LiMandri alleges that "Besides the Prejean Parties and the mediator, the only people present in the room [when the sex tape was revealed] were [codefendants] Lewis and Nguyen." Prejean is not a party to this lawsuit.

### *Moakler and the Law Firm Attempt to Have the Complaint Dismissed*

Moakler and the Law Firm brought motions to strike LiMandri's complaint. The trial court denied Moakler's anti-SLAPP motion on the grounds that it was untimely. The court initially sustained Moakler's demurrers to LiMandri's complaint without leave to amend on the ground that LiMandri lacks standing to pursue his claims. LiMandri asked the trial court to reconsider its ruling, arguing that he has standing to sue because he is named party to the Settlement Agreement, and has a "right to financial privacy in the amount of his fee award." The trial court granted LiMandri's motion and gave him leave to amend his causes of action for breaches of the Settlement Agreement and the implied covenant of good faith and fair dealing.[5] The court granted the Law Firm's anti-SLAPP motion only as to LiMandri's cause of action for fraudulent inducement. It

---

[5] On page one of its opening brief, the Law Firm trumpets the trial court's "legally impossible and erroneous" ruling that LiMandri can pursue his lawsuit against the Law Firm despite ruling (on Moakler's demurrer) that LiMandri lacks standing. It omits mention that the standing ruling was vacated on reconsideration. Misrepresenting the trial court's rulings and the record on appeal is a poor and discrediting practice.

denied the motion with respect to LiMandri's contract claims, finding that he has established a probability of prevailing on his claims.

### *The Law Firm's Appeal and LiMandri's Cross-Appeal in B234460*

The Law Firm appeals from the trial court's denial of its anti-SLAPP motion as to LiMandri's claims for breaches of the Settlement Agreement and the JAMS confidentiality agreement, and breach of the implied covenant of good faith and fair dealing. LiMandri cross-appeals the court's ruling striking his cause of action for fraudulent inducement.

A special motion to strike may resolve individual causes of action. (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1387; *Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 150.) Appeal may be taken from an order granting or denying a motion to strike disputed causes of action. (§ 425.16, subd. (i); *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1180 [appeal taken from the denial of a motion to strike the first and thirteenth causes of action, leaving plaintiff's other claims aside].) Review is de novo. (*Id.* at p. 1181.)

The court may strike causes of action "arising from" the defendant's exercise of its right to petition or to free speech. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Performing a two-step analysis, the court first determines whether the defendant has shown that the challenged causes of action arise from protected First Amendment activity. If the threshold showing is met, the burden shifts to the plaintiff to establish a probability of prevailing on the claim. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712.) The court examines "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based" (§ 425.16, subd. (b)(2)), but does not weigh the evidence; rather, it must accept as true all evidence favoring the challenged pleading. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291; *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 45-46.)

At the threshold of the two-step analysis, the Law Firm argues that section 425.16 applies to LiMandri's complaint, which arises from (1) public statements that defendants

allegedly made about Prejean's conduct, the mediation, and the Settlement Agreement and (2) misrepresentations defendants made to LiMandri during the mediation.

### a. *LiMandri's Contract Claims Against the Law Firm and Nguyen*

LiMandri's lawsuit alleges a breach of two contracts in which defendants relinquished their right to speak publicly about the mediation and settlement. The JAMS agreement states that disclosure of any information obtained during the mediation "would cause irreparable injury" and incorporates by reference state law provisions regarding mediation confidentiality.[6] The JAMS confidentiality agreement was signed by the attorneys for the parties, including the Law Firm. In addition, the parties expressly covenanted in the Settlement Agreement to keep its terms and even its existence from ever being disclosed to the public.[7]

Conduct alleged to be a breach of contract may fall within the anti-SLAPP statute, which focuses not on plaintiff's cause of action but on the defendant's *activity*. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier*).) If the defendants engaged in speech in connection with a matter of public interest, the first prong of the analysis is met. Any claimed illegitimacy of the defendants' conduct "must be resolved as part of a plaintiff's secondary burden to show the action has 'minimal merit.'" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 319-320 (*Flatley*).) This analysis applies in a lawsuit alleging that

---

[6] "Anything said, any admission made, or any writing that is inadmissible, protected from disclosure, and confidential under this chapter before a mediation ends, *shall remain inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends*." (Evid. Code, § 1126, italics added.)

[7] The Settlement Agreement requires the parties to release a statement saying that they "'have met, dropped their claims against each other and wish each other the best in their future endeavors.' Except for such statement, . . . *the terms and provisions of this Settlement Agreement, or the fact that the parties entered into this Settlement Agreement, shall never be disclosed by any party hereto* (*or their . . . attorneys . . .*), whether directly, indirectly or otherwise, *it being the intent of the parties hereto to maintain the strictest confidentiality regarding this Settlement Agreement, its entry and its contents*." (Italics added.)

defendants violated contractual obligations set forth in a settlement agreement. (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1408.)

The Law Firm argues that any statements made to the media about Prejean's conduct or the settlement occurred in "a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) We agree that Prejean is a public figure as a beauty pageant contestant and subsequently as a book author, whose opinion about same-sex marriage garnered national attention during the Miss Universe pageant. Defendants' statements about Prejean to TMZ, the Advocate, and others were made in a public forum about a matter of public interest. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1006 [comments made on electronic media occurs in a public forum].) Further, the Law Firm's statements to LiMandri during mediation were made in connection with a matter pending before a court. (§ 425.16, subd. (e)(2).)

We move to the second prong of the analysis, in which LiMandri bears the burden of showing that his claims have "'minimal merit.'" (*Flatley*, *supra*, 39 Cal.4th at pp. 319-320.) LiMandri argues that he is likely to prevail because defendants contracted to forego their right to speak publicly. "'[I]t is possible to waive even First Amendment free speech rights by contract.'" (*Sanchez v. County of San Bernardino* (2009) 176 Cal.App.4th 516, 528 (*Sanchez*); *ITT Telecom Products Corp. v. Dooley* (1989) 214 Cal.App.3d 307, 319.) The courts closely scrutinize waivers of constitutional rights and "'"'indulge every reasonable presumption against a waiver.'"'" (*Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1400.) Any waiver must be "clear and compelling." (*City of Glendale v. George* (1989) 208 Cal.App.3d 1394, 1398.)

Signing a confidentiality provision waives First Amendment rights, preventing a party from disclosing the circumstances surrounding a settlement agreement. In *Sanchez,* a high-ranking employee in San Bernardino had a romance with the leader of the sheriff's deputies union. When Sanchez's supervisor learned of the extramarital affair, he told Sanchez that she had to resign. Sanchez and the county signed a confidential

9

"Compromise, Release and Settlement Agreement" prepared by county counsel.[8] Immediately after the settlement agreement was signed, a number of newspapers reported on Sanchez's resignation: the articles named two county employees as sources who revealed that Sanchez had resigned after having an improper relationship. The media reports provoked a county investigation, which concluded with a report about the circumstances of Sanchez's resignation. (176 Cal.App.4th at pp. 518-523.)

Sanchez sued the county for breaching the settlement's confidentiality provision. The appellate court found no basis for declaring the provision void on public policy grounds because there was no statute requiring the county to publicly disclose the circumstances of Sanchez's resignation. (*Sanchez*, *supra*, 176 Cal.App.4th at pp. 525-527.) There was no way to construe the confidentiality provision except as a waiver of the county's First Amendment right to publicly discuss the settlement. (*Id.* at p. 528.)

The Law Firm cites no precedent permitting parties to confidentiality and nondisclosure agreements or their attorneys to speak publicly after expressly forfeiting their right to do so. On the contrary, the Supreme Court has construed section 425.16 to mean that "a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." (*Navellier*, *supra*, 29 Cal.4th at p. 94.) The resulting lawsuit arises from a breach of the contract that prevents the defendant "from engaging in certain speech-related conduct." (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1308.) The anti-SLAPP statute affords no protection to the defendant who breaches a contract limiting his right to speak publicly on matters of public interest. (*Id.* at pp.1307-1309.) Moreover, the litigation privilege does not bar a breach of contract claim arising

---

[8]     The confidentiality provision read, "'To the maximum extent permitted by law, the parties [ ] agree that this Agreement, the terms and conditions of this Agreement, the facts, events and issues which gave rise to this Agreement, and any and all actions by Ms. Sanchez and the County [ ], are strictly confidential and shall not be disclosed or discussed with any other persons, entities or organizations, whether within or without the County.'" (*Sanchez*, *supra*, 176 Cal.App.4th at p. 522.)

from violations of confidentiality provisions contained in a settlement agreement. (*Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1493-1494.)

The confidentiality provision of the Settlement Agreement *expressly* applies to the attorneys for the parties. As counsel, the Law Firm can be presumed to know what it was doing when it gave up its right to speak about the Prejean settlement. There is no doubt that the Law Firm's waiver of its right to speak publicly about the settlement is clear and compelling: it was this very promise to maintain public silence that formed the basis of the settlement. Though the Law Firm did not sign the Settlement Agreement as a "party," it is bound by the confidentiality provision to the same extent as its client. (See fn. 7, *ante*.)

An attorney's breach of a confidentiality provision is not protected by section 425.16. (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 869.) "The privacy of a settlement is generally understood and accepted in our legal system, which favors settlement and therefore supports attendant needs for confidentiality." (*Hinshaw, Winkler, Draa, Marsh & Still v. Superior Court* (1996) 51 Cal.App.4th 233, 241.) Public disclosure of confidential information "would chill the parties' ability in many cases to settle the action before trial. Such a result runs contrary to the strong public policy of this state favoring settlement of actions." (*Board of Trustees of California State University v. Superior Court* (2005) 132 Cal.App.4th 889, 899.) As a matter of legal ethics, it is intolerable to imagine that an attorney can freely violate the promise of confidentiality that binds his client. Thus, even if Nguyen spoke in a public forum with regard to an issue of public interest, it is not necessarily *protected* speech because defendants voluntarily relinquished their right to discuss Prejean's case.

The record shows that the Law Firm submitted a mediation brief arguing that "Prejean and her counsel" face significant risks if they failed to settle, the risk that she might be branded a "hypocrite" because "as everyone knows, the fastest path to destruction is the revelation (or even just the perception) that a person is a hypocrite," noting that she espoused "conservative Christian values" but might be tripped up by "a previously undisclosed photograph or video [that] would destroy Ms. Prejean's newfound

11

reputation as a family values poster girl."  The Law Firm went on to assert that LiMandri was "using" Prejean to push a same-sex marriage agenda and predicted that he "will have great financial exposure" if he continued the lawsuit.

After emphasizing the career-destroying effects of being called a "hypocrite," Nguyen gave a postsettlement interview to the Advocate in which he is quoted as saying that "the events of [Prejean's] case helped to expose her as a hypocrite and discredit her." Thus, Nguyen publicly uttered the very insult he deployed during mediation to threaten Prejean and LiMandri into settlement, and plainly refers to his own display of the confidential sex tape during the mediation.  The Settlement Agreement requires those involved to conceal the contents and existence of the sex tape.  In addition, after Prejean settled, Nguyen wrote an article in the Advocate in 2010 using the terms "notoriety" and "infamy" to refer to Prejean, suggesting disgraceful or unsavory behavior.  We are satisfied that this is enough evidence to establish the second prong:  a jury could find that Nguyen and the Law Firm breached the confidentiality agreements.

The Law Firm's standing argument is not convincing at this stage of the proceedings.  LiMandri is a named party to the Settlement Agreement entitled to sue for "any violation" of the confidentiality provisions.  In opposition to the motion to strike, LiMandri declared that his right to sue for breach of the confidentiality provisions "was part of the bargained-for consideration of the settlement agreement."  LiMandri settled the case "on favorable terms to the defendants" to prevent his client from being "essentially blackmailed with the private photos and videos" and to prevent Prejean's and LiMandri's reputations from being injured.

The benefit of settling quietly was ruined when defendants publicized confidential information mere hours after the Settlement Agreement was signed.  Someone publicly described the shock and distress Prejean and her mother experienced in the mediation room:  inasmuch as Lewis and Nguyen are the only defendants to witness these emotional reactions, it considerably limits the list of likely suspects who committed the breach of confidence.  We cannot say as a matter of law that LiMandri should be deprived of the

12

benefit of his bargain, as a party to a Settlement Agreement that includes promises of confidentiality.

We are not impressed by the Law Firm's claim that LiMandri breached the nondisclosure provisions when he engaged in "damage control" after defendants wrongfully revealed confidential information. A defendant's breach of a confidentiality provision excuses further performance by plaintiff to keep matters confidential. (*Sanchez*, *supra*, 176 Cal.App.4th at pp. 529-530; *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1602-1603.)

The Law Firm argues that its conduct is protected petitioning activity. It is mistaken. "[D]efendant's entering into the settlement agreement during the pendency of the federal case was indeed a protected activity, but defendant's subsequent alleged breach of the settlement agreement after the federal case was concluded is not protected activity because it cannot be said that the alleged breaching activity was undertaken by defendant in furtherance of defendant's right of petition or free speech, as those rights are defined in section 425.16. Thus, the instant suit is based on alleged conduct of defendant that is *not* protected activity." (*Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108, 1118 (*Applied*).)

The court in *Applied* declined to extend *Navellier* "to cover all causes of action alleging the breach of a settlement agreement when the case that produced the settlement agreement was concluded prior to the alleged breach." (*Applied*, *supra*, 164 Cal.App.4th at p. 1118.) In *Navellier,* plaintiff alleged that Sletten misrepresented his intent to be bound by a release in a still-pending federal action that the parties were pursuing in the Ninth Circuit. (29 Cal.4th at pp. 86-87.) Specifically, Sletten released his claims against Navellier, then proceeded to file counterclaims after Navellier amended the complaint in federal court, prompting Navellier to sue Sletten in state court for violating the terms of the release. The Supreme Court found that Sletten's negotiation, execution and repudiation of the release arose from acts in furtherance of Sletten's right to petition—by filing counterclaims—in the pending federal case. (*Id.* at p. 90.)

13

Here, the Law Firm's alleged breaches of the Settlement Agreement and the JAMS confidentiality agreement occurred after the Prejean litigation concluded. "[T]he gist of plaintiff's complaint is not that defendant did something wrong by acts committed during the course of the underlying [ ] action, but rather that defendant did something wrong by breaching the settlement agreement after the underlying action had been concluded." (*Applied*, *supra*, 164 Cal.App.4th at p. 1118.) By the time that the Law Firm breached the Settlement Agreement, it was no longer engaged in petitioning activities: its alleged misconduct occurred after Prejean settled, unlike *Navellier,* in which the underlying case was still being litigated when Sletten was sued for filing counterclaims. Any other outcome would render confidentiality provisions used to promote a settlement utterly worthless and illusory for both defendants and plaintiffs who settle court cases to maintain their privacy. And it would undermine Evidence Code section 1126, which requires that confidential information remain confidential even after the mediation is over. (See fn. 6, *ante*.) The trial court properly denied the Law Firm's special motion to strike LiMandri's contract claims.

LiMandri's request for an award of attorney fees for defending against a frivolous anti-SLAPP motion is denied. (§ 425.16, subd. (c)(1).) If the issues in these appeals were obvious and simple, their resolution would not have required 382 pages of briefing in B234460, plus another 144 pages in B237158.

### b. *LiMandri's Fraudulent Inducement Claim Against the Law Firm and Nguyen*

LiMandri's cross-appeal addresses his fraudulent inducement claim, which was stricken by the trial court. He alleges that defendants misrepresented during settlement discussions that they would abide by the confidentiality provisions, They induced him to "greatly reduce his fees in return for the assurance that all of the provisions of the agreement, particularly the confidentiality provisions, would be kept." LiMandri relied on defendants' assurances and signed the Settlement Agreement, causing him economic loss and harm to his professional reputation.

LiMandri argues that California law does not apply, pointing to a provision of the Settlement Agreement mandating the application of New York law to disputes between

14

"the parties."**9**  The Settlement Agreement specifies that its terms and existence will "never be disclosed by any party hereto (or their attorneys)."  (See fn. 7, *ante*.)  An agent may be liable for a breach of contract when an intent to make the agent liable is clear and explicit.  (*Filippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1443; *Heringer v. Schumacher* (1928) 88 Cal.App. 349, 352.)  The nondisclosure proviso does not make the Law Firm a party to the agreement to pay LiMandri $110,000; however, it can be a basis for liability if Nguyen proves to be responsible for making prohibited disclosures of confidential information.  Because the Law Firm is not a party to the entire Settlement Agreement, New York law does not apply to this dispute.  This is particularly true because the JAMS confidentiality agreement signed by the Law Firm states that the mediation was governed by California law.

Statements made during litigation to induce settlement are within the scope of section 425.16.  For example, an attorney who makes a settlement offer during a prior action cannot be sued because "communication of an offer to settle the ongoing lawsuit [is] a matter connected with issues under consideration [ ] by a judicial body" that "directly implicates the right to petition."  (*GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 908.  Accord:  *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963.)  LiMandri's attempt to sue the Law Firm for promises it made during the JAMS mediation in order to reach a settlement arises from protected activity in the course of ongoing litigation.

LiMandri asserts that section 425.16 does not apply because the Law Firm committed a crime.  A prelitigation demand that "constituted criminal extortion as a matter of law [is] unprotected by constitutional guarantees of free speech or petition." (*Flatley*, *supra*, 39 Cal.4th at p. 305.)  In *Flatley*, the defendant attorney sent a letter to an

---

**9**      Paragraph 16 of the Settlement reads, "This Settlement Agreement; all relations between the parties; and, any and all disputes between or among the parties, whether sounding in contract, tort or otherwise, is to be exclusively construed in accordance with and/or governed by (as applicable) the law of the State of New York without recourse to New York's (or any other) choice of law or conflicts of law principles."

15

entertainer threatening to publicly accuse him of rape unless he "settled" by paying a sum of money to ensure silence. (*Id.* at p. 329.) The Supreme Court deemed the letter "criminal extortion as a matter of law." (*Id.* at p. 330.)

LiMandri asserts that the Law Firm's conduct during settlement negotiations amounted to obtaining money by false pretenses (Pen. Code, § 532); or extortion (Pen. Code, § 519); or a violation of counsel's duty to not intentionally deceive a party to litigation (Bus. & Prof. Code, §§ 6068, 6128). We cannot say, as a matter of law, that the facts alleged by LiMandri amount to theft or extortion. Prejean's fulfillment of her contractual promise that she had high moral standards and had never been photographed in a lewd, compromising or sexually suggestive manner was at issue in the pending litigation: it was not extortionate for defendants to disclose during mediation that they possessed evidence produced by subpoena that tended to prove the allegations in the cross-complaint regarding Prejean's breach of contract. A factual dispute exists with respect to the Law Firm's alleged deceit about maintaining confidentiality. Because a crime was not shown to have been committed as a matter of law, LiMandri's claim of fraudulent inducement falls within the scope of section 425.16.

We turn to whether LiMandri has established a probability of prevailing on his fraudulent inducement claim. He cannot. As the Law Firm contends, misrepresentations made during settlement discussions are absolutely privileged. (Civ. Code, § 47, subd. (b).) The litigation privilege is not limited to statements made inside a courtroom. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361.) It applies to communications made in judicial proceedings by litigants or other participants to achieve the objects of the litigation and have some connection or logical relation to the action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) In particular, the public policy underlying the litigation privilege does not permit attorneys to sue one another for omissions or misrepresentations made during the course of litigation. (*Pollock v. Superior Court* (1991) 229 Cal.App.3d 26, 29.) Thus, misstatements made by a party or an attorney during settlement negotiations cannot form the basis for subsequent tort claim that they were intended to fraudulently induce the settlement. (*Home Ins. Co. v. Zurich*

16

*Ins. Co.* (2002) 96 Cal.App.4th 17, 24; *Flatley*, *supra*, 39 Cal.4th at p. 325.)  The trial court properly granted the Law Firm's special motion to strike LiMandri's claim of fraudulent inducement.

     *c.  Conclusion*

     In sum, (1) although Nguyen made statements about a matter of public interest in a public forum, LiMandri has demonstrated a probability of prevailing on his claims:  the anti-SLAPP statute does not protect statements made in breach of the Settlement Agreement's nondisclosure provisions or the JAMS confidentiality agreement because the Law Firm waived its right to speak publicly about the Prejean case; (2) the Law Firm's alleged postsettlement breaches of the confidentiality agreements are not protected petitioning activity under the anti-SLAPP statute; and (3) promises made during settlement discussions are protected petitioning activity because they occurred during ongoing litigation, and LiMandri has not shown a probability of prevailing on his fraudulent inducement claim.

### *Shanna Moakler's Appeals in B234460 and B237158*

     In B234460, Moakler appeals from the trial court's ruling that her motion to strike LiMandri's complaint under section 425.16 was untimely.  In B237158, Moakler appeals from the denial of her motion to strike LiMandri's first amended complaint:  the trial court ruled that Moakler's second motion to strike lacks merit.

     First, we address Moakler's appeal in B234460.

     A special motion to strike a complaint as a SLAPP "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper."  (§ 425.16, subd. (f).)  The trial court's denial of an application to file a late anti-SLAPP motion is reviewed for an abuse of discretion.  (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 782.)  That discretion may be abused if the court acted in a whimsical, arbitrary or capricious manner that exceeds the bounds of reason, or had a mistaken view of the scope of its discretion.  (*Ibid.*)

     There are two potential purposes of the 60-day limitation in section 425.16.  One is to require prompt presentation and resolution of the anti-SLAPP claim before the

17

parties have started to accrue the expenses of litigation, and the other is to avoid tactical manipulation. (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285.) In *Morin v. Rosenthal* (2004) 122 Cal.App.4th 673, 679, for example, the defendant sought to file an anti-SLAPP motion six weeks past the 60-day deadline. The court did not abuse its discretion by denying the motion because the defendant engaged in "procedural maneuvering" before filing his motion. (*Id.* at p. 681.)

LiMandri filed his complaint on November 10, 2010. On November 15, Moakler's attorney Melvin Avanzado informed LiMandri that he was authorized to accept service of the complaint against his client, and warned LiMandri not to "harass" or embarrass Moakler by serving her directly. A process server delivered the complaint to Avanzado on November 16. Moakler filed her motion to strike on January 31, 2011.

LiMandri objected that Moakler's anti-SLAPP motion was untimely. In reply, Moakler argued that the operative date of service is December 2, when Avanzado sent LiMandri an acknowledgement of receipt stating that the complaint was hand-served on November 16. Avanzado maintained that LiMandri "never informed us that the notice of acknowledgement procedure was inapplicable."

At the hearing, the court stated that Moakler's motion was 15 days late. Avanzado replied that he calculated the 60-day statutory deadline from December 2, the date he signed the acknowledgement. Avanzado conceded that LiMandri "served me personally on November 16, no question." Nevertheless, he complained that LiMandri "induced me to believe" that December 2 was the correct service date. LiMandri rejoined that Avanzado only asked for an extension of time to demur or answer the complaint, not an extension to file an anti-SLAPP motion; LiMandri would never agree to an extension of time for a defendant who was seeking an award of attorney fees. After listening to the arguments, the court observed that "when you [Avanzado] say 'Do not serve my client; serve me,' and he [LiMandri] does that and then 75 days go by when the statute says 60, then it's untimely." The court acknowledged its discretion, but chose to deny Moakler's motion as untimely.

18

The court did not abuse its discretion when it denied Moakler's motion on the grounds of untimeliness. Just five days after the complaint was filed, Avanzado informed LiMandri in writing that he was authorized to accept service for Moakler; in fact, Avanzado threatened to sue LiMandri for abuse of process if LiMandri served Moakler directly with the complaint. As a result, LiMandri personally served Avanzado on November 16. Summons may be served on a person by delivering a copy of the complaint to the plaintiff "or to a person authorized by him to receive service of process." (§ 416.90.) An attorney is an agent authorized to accept service on behalf of a client. (*Warner Bros. Records, Inc. v. Golden West Music Sales* (1974) 36 Cal.App.3d 1012, 1015, 1017.) The service on Moakler was effective on November 16, the day it was made on her authorized agent.

Attempts to blame LiMandri for Avanzado's misunderstanding of the law on service of summons fall short: LiMandri was under no duty to instruct opposing counsel about the law. Avanzado's claim to have unilaterally extended the service date out to December 2 by sending a receipt is self-serving: Avanzado cannot cry "foul" just because LiMandri did not question why Avanzado provided the unnecessary receipt. Finally, Avanzado defeated the purpose of the anti-SLAPP statute by engaging in litigation—specifically by demurring—instead of filing a timely motion to strike under section 425.16. The trial court decided that Avanzado's procedural maneuvering did not excuse his late filing of the anti-SLAPP motion. This was not an abuse of discretion, and the elements of estoppel are not met.

Finally, we move to Moakler's appeal in B237158. This appeal addresses the merits of Moakler's second anti-SLAPP motion, directed at LiMandri's first amended complaint. An anti-SLAPP motion may be filed when a defendant is served with an amended complaint. (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 835.) The amended pleading asserts causes of action for breach of the Settlement Agreement and breach of the implied covenant of good faith and fair dealing.

Moakler's motion to strike LiMandri's contract claims fails for the same reasons that the Law Firm's motion fails because Moakler, like Nguyen and the Law Firm,

19

waived her First Amendment rights when she agreed to maintain confidentiality, expressly forfeiting her right to speak publicly about—or even acknowledge the existence of—the Settlement Agreement. Everything that was confidential during the mediation remained confidential after the mediation ended.

The only thing that Moakler was entitled to say after signing the Settlement Agreement was that the parties have "dropped their claims against each other and wish each other the best in their future endeavors." Any postsettlement statement about Prejean's case beyond the good wishes is not protected speech. Though it touched a matter of public interest, it may prove to be costly rather than "free" speech, if it is found to be a breach of the two confidentiality agreements.

For example, in a postsettlement televised interview, Moakler referred to Prejean's "pornographic video," a confidential matter encompassed by the Settlement Agreement. We repeat, "a defendant who in fact has validly *contracted not to speak* [ ] has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." (*Navellier*, *supra*, 29 Cal.4th at p. 94, italics added.) Further, Moakler's postsettlement conduct was not protected petitioning activity. (*Applied*, *supra*, 164 Cal.App.4th at p. 1118.)

## DISPOSITION

The judgment in B234460 is affirmed as to all three appeals arising from it. The judgment in B237158 is affirmed. The parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.


20